**DAVID W. HUSTON, ESQ.**
Nevada Bar No. 00855
**THE LAW OFFICE OF DAVID W. HUSTON, P.C.**
**601 South Seventh Street**
**Las Vegas, Nevada  89101**
**702/384-9555**
**702/384-9517   (Fax)**

**Attorney for Plaintiff**

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>GENERAL ELECTRIC CAPITAL CORPORATION,<br>                              Plaintiff,<br>vs.<br><br>HIGH COUNTRY HOMES OF ANZA, INC., a California corporation; RIVER WEST, INC., an Arizona corporation; and DESERTO VERDE, LLC, a Nevada limited liability company;<br><br>                              Defendants. | CASE NO.: 10-1056<br>DEPT. NO.:<br><br><br><br>**COMPLAINT TO RECOVER POSSESSION OF <u>PERSONAL PROPERTY</u>** |

COMES NOW PLAINTIFF, GE COMMERCIAL DISTRIBUTION FINANCE CORPORATION., a Delaware Corp., and for its complaint, submits the Affidavit of Heidi Seever herewith and alleges as follows:

PARTIES

1. At all times herein mentioned, Plaintiff GE Commercial Distribution Finance Corporation (hereinafter "CDF") was, and is, a corporation that is organized under the laws of the State of Delaware, and was, and is, authorized to transact business in the State of Nevada and within this judicial district.

2. Upon information and belief, at all times herein mentioned, Defendant High

1

Country Homes of Anza, Inc. ("High Country") was, and is, a corporation that is organized under the laws of the State of California and authorized to do business in the State of Nevada, and is subject to service of process on its resident agent, Steve Beaver, 911 South Highway 160, Pahrump, NV 89048.

3. Upon information and belief, at all times herein mentioned, Defendant River West Homes, Inc. ("River West") was, and is, a corporation that is organized under the laws of the State of Arizona. River West may be served with process through its registered agent, Lorraine Salas, at 505 California Avenue, Parker, Arizona 85344.

4. Upon information and belief, at all times herein mentioned, Defendant Deserto Verde, LLC was, and is, a limited liability company that is organized under the laws of Nevada, and is subject to service of process on its resident agent, The Corporation Trust Company of Nevada, 311 S. Division Street, Carson City, NV 89703.

JURISDICTION AND VENUE

5. The Court has jurisdiction to entertain this action under 28 U.S.C. §1332, because there is complete diversity of citizenship between Plaintiff and Defendants and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6. Venue is proper in the United States District Court for the District of Nevada under 28 U.S.C. §1391(a) as this is the district in which a Defendant has its principal place of business, in which the acts giving rise to the action occurred, and in which the property in issue is located.

**GENERAL ALLEGATIONS**

7. Defendants River West, Inc. and High Country Homes of Anza, Inc. (hereinafter collectively "Borrower") are in the business of selling manufactured homes to retail customers.

8. CDF's principal business is a type of secured lending referred to as "floorplan financing" or "floorplanning," which is the financing of a borrower's purchases of inventory from manufacturers and distributors which the dealership will attempt to sell to retail customers.

9. On or about November 17, 2006, Borrower executed and entered into an Inventory Financing Agreement and amendments, program letters, agreements, and other

2

1  documents executed therewith (collectively the "Security Documents") in favor of CDF, under
2  which Borrower granted CDF a security interest in certain collateral owned by Borrower, as
3  described in the Security Documents, including, but not limited to, all Borrower's Accounts,
4  Inventory, Equipment, Fixtures, other Goods, General Intangibles (including, without limitation,
5  payment intangibles), Chattel Paper (whether tangible or electronic), Instruments (including,
6  without limitation, promissory notes), Deposit Accounts, Investment Property and Documents
7  and all the Products and Proceeds of the foregoing. (the "Collateral").  True and correct copies of
8  the Security Documents are attached to the Affidavit of Heidi Seever (the "Affidavit") as Exhibit
9  A and are incorporated herein by reference.

10         10.     On or about July 12, 2001, CDF filed a UCC-1 financing statement to perfect its
11  security interest in the Borrower's Collateral with the Arizona Secretary of State, Filing No.
12  20011181508-0.  On or about September 5, 2002, CDF filed a UCC-1 financing statement to
13  perfect its security interest in the Borrower's Collateral with the California Secretary of State,
14  Filing No. 02-24960246. CDF has filed all required amendments and continuations in order to
15  maintain its perfected status.  True and correct copies of said UCC-1 financing statements,
16  amendments, and continuations are attached to the Affidavit as collective Exhibit B and are
17  incorporated herein by reference.

18         11.     Pursuant to the terms of the Security Documents, CDF did, in fact, finance the
19  acquisition of Borrower's manufactured home inventory ("Inventory"). A true and correct copy
20  of a list of Inventory in Borrower's possession is attached to the Affidavit as Exhibit C and
21  incorporated herein by reference.

22         12.     Upon information and belief, Defendant Deserto Verde, LLC ("Deserto") is the
23  owner and/or operator of that real property commonly described as 350 West Wilson Road,
24  Pahrump, NV 89048 (the "Pahrump premises").

25         13.     Upon information and belief, the following units of Inventory are located at the
26  Pahrump premises:

27         Model Number              Serial Number
28         24-1813E                  48748V10227

David W. Huston
Attorney at Law
A Professional Corporation

| | |
|---|---|
| 07 SONORA | 30902V01805 |
| 27-1963 | 65663V10590 |
| 08 SONORA | 32830V01953 |

14. By virtue of that Landlord Waiver Agreement, entered into between Deserto and CDF on or about March 28, 2008, Deserto waived all rights to attach liens to CDF's Collateral and granted CDF the right to remove its Collateral without interference. A copy of the Landlord Waiver Agreement is attached to the Affidavit as Exhibit D and incorporated herein by reference.

15. CDF has performed all conditions, covenants, and promises required by it on its part to be performed in accordance with the terms and conditions of the Security Documents.

16. Borrower defaulted upon the Security Documents by failing to remit the required interest payments under the Security Documents, and by failing to obtain the required landlord lien waivers.

17. On or about July 2, 2009, CDF notified Borrower by mail that Borrower was in default under the Security Documents and that, pursuant to its rights under the Security Documents, CDF had decided to terminate Borrower's credit facility.  Additionally, CDF demanded that Borrower cure the default and remit interest payments due under the Security Documents in the amount of $97,736.53.  A true and correct copy of the Default letter is attached to the Affidavit as Exhibit E and is incorporated herein by reference.

18. Borrower failed to cure the default.

19. On or about July 8, 2009, CDF notified Borrower by mail that it was, pursuant to its rights under the Security Documents, accelerating the balance of the loan, and demanded immediate payment of Borrower's entire indebtedness in the Amount of $3,209,170.48, including $3,082,798.80 in principal and $126,371.68 in interest and other charges. A true and correct copy of the Acceleration letter is attached to the Affidavit as Exhibit F and is incorporated herein by reference.

20. Borrower failed to remit payment for the balance owed.

21. Thereafter, Borrower and CDF convened to negotiate terms for a forbearance

agreement.

22. On or about December 21, 2009, Borrower and CDF entered into a forbearance agreement whereby CDF agreed to refrain from exercising its default rights under the Security Documents conditioned on Borrower's agreement to, among other things, execute specified real estate mortgages in favor of CDF, make monthly payments for repayment of past due interest, and provide certain financial documentation to CDF. A true and correct copy of the executed Forbearance Agreement is attached hereto as Exhibit G and is incorporated herein by reference.

23. Borrower never executed the real estate mortgages and further defaulted under the Forbearance Agreement by failing to make the required monthly payments for March, 2010 and April, 2010.

24. Despite numerous attempts by CDF and counsel to work out the defaults, Borrower refused to provide the real estate mortgages or otherwise comply with the Forbearance Agreement, including, but not limited to, remitting payments and complying with requests for fiscal information and documents.

25. Thereafter, Borrower further defaulted under the Forbearance Agreement by selling Inventory without remitting payment to CDF, an act described in the commercial lending industry as selling out-of-trust ("SOT").  See Exhibit A.

26. Moreover, Borrower failed to provide proofs of insurance for two additional units, thus rendering those units out-of-trust under the Security Documents. See Exhibit A.

27. On or about May 4, 2010, CDF, by and through counsel, noticed Borrower of its continuing defaults under the Forbearance Agreement, and demanded that the defaults be cured or, alternatively, the Inventory be surrendered, by May 7, 2010. A true and correct copy of the demand letter is attached hereto as Exhibit H and is incorporated herein by reference.

28. Borrower failed to cure the defaults or surrender the Inventory.

29. In a final attempt to work out the defaults, CDF met with Borrower, in person, on June 3, 2010. In the meeting, Borrower was advised that any further forbearance by CDF was conditioned on, among other things, Borrower's production of certain financial information by June 10, 2010.

30. Borrower failed to provide the requested information by the June 10th deadline, and has not provided the information to CDF as of the execution of this affidavit.

31. Despite numerous demands by CDF, Borrower remains in default and has been unresponsive since the June 3 meeting.

32. As of the date of the execution of the Affidavit, Borrower outstanding indebtedness to CDF is $2,590,046.87, including $2,192,133.86 in principal and $397,913.01 in interest and other charges.

33. CDF is informed and believes that the total value of the Inventory detained by the Borrower is at most $2,050,123.86, which includes the Inventory located in Nevada and subject to this suit, valued at $207,754.06.

34. CDF is entitled to repossess the Collateral as a result of Borrower's default under the Security Documents, and Borrower is detaining the Collateral wrongfully and without legal basis.

35. Because Borrower has sold Inventory out of trust and refused to, pursuant to the Forbearance Agreement, execute the real estate mortgages to provide additional security to CDF, the value of the remaining Inventory is no longer sufficient to cover the debt owed to CDF; therefore, CDF is seeking to recover all units of Inventory.

36. The Inventory has not been taken for a tax assessment or fine pursuant to statute, or seized under an execution or an attachment against the Inventory for CDF.

37. Under the terms of the Security Documents, Borrower is liable to CDF for all costs, expenses and attorneys' fees incurred by CDF in connection with enforcing the terms of the Security Documents.

38. CDF has retained the services of David Huston, Esq. to prosecute the within action and has thereby incurred attorneys' fees and is entitled to recover attorneys' fees and costs pursuant to the Security Documents.

39. CDF reserves its right to pursue the Borrower and any and all Guarantors of Borrower's obligations to CDF for any deficiency amount once the Collateral has been recovered and sold and the proceeds applied to Borrower's outstanding indebtedness, including, but not

limited to, filing an arbitration demand in the applicable arbitral forum.

## COUNT I

### Claim and Delivery

40. CDF refers to the preceding paragraphs of the within Complaint and incorporates said paragraphs by this reference as though set forth in full.

41. CDF is informed and believes that the total value of the Inventory detained by the Borrower is at most $2,050,123.86, which includes the Inventory located in Nevada and subject to this suit, valued at $207,754.06.

42. The Inventory was last identified at multiple locations, as more particularly described, above.

43. As to the Borrower, Plaintiff is entitled to possession of the Collateral, including the Inventory, by virtue of the default of Borrower and the contractual entitlement to possession upon such default.

44. As to Defendant Deserto, Plaintiff is entitled to possession of the Inventory by virtue of that Landlord Waiver Agreement, entered into on or about March 28, 2010.

45. The Inventory is wrongfully held by Defendants because of their failure to surrender possession as contractually required.

46. Upon information and belief, Borrower is detaining and/or controlling the Inventory, so that it may continue sales of the Inventory, despite CDF's demands therefore.

47. Borrower refuses or otherwise fails to cure the defaults under the Security Documents, make payment of the accelerated balances, or turn over the Inventory or any portion thereof to CDF. Therefore, Borrower is wrongfully detaining and/or controlling the Inventory in violation of CDF's rights.

48. By reason of the past conduct of Borrower in failing to make interest payments due under the Security Documents, selling Inventory out of trust and refusing to execute the real estate mortgages, CDF's security interest in the Collateral has been eroded.

49. Upon information and belief, Defendant Deserto is detaining and/or in possession of the Inventory by virtue of an arrangement between Deserto and Borrower.

50. Upon information and belief, the Inventory has not been taken for a tax assessment or fine pursuant to statute, or seized under an execution or an attachment against the Inventory for CDF.

51. Unless the Court grants CDF's Application for Claim and Delivery, the remaining Inventory may be dissipated, concealed, or sold to the general public. When the Borrower dissipates or sells Inventory without remitting payment to CDF, CDF's security interest in the Collateral is lost.

52. Although Plaintiff is a secured party as defined in Chapter 104 of the Nevada Revised Statutes and no bond or undertaking is required for the issuance of the Writ under N.R.S. 31.863(2), Plaintiff has duly posted a bond in double the value of the subject Property.

## COUNT II

### Temporary Restraining Order and Preliminary Injunction

53. CDF refers to the preceding paragraphs of the within Complaint and incorporates said paragraphs by reference as though set forth in full.

54. CDF is seeking a Temporary Restraining Order against the Borrower and Preliminary Injunction against all Defendants, restraining the Defendants and all parties acting in concert with them, from dissipating, concealing, selling, transferring, pledging, hypothecating, granting a security interest in, or otherwise disposing of Collateral, including the Inventory, and from ill-treating, damaging, destroying, or misusing the Collateral pending a hearing on CDF's Application for Claim and Delivery and CDF's execution on its writ if CDF's application is granted. It is anticipated that from the time CDF files its Application for Claim and Delivery and obtains the Writ, it will be at least ten to fifteen days before the Marshall or other law enforcement can execute on the writ. During that time, CDF requests a Temporary Restraining Order and Preliminary Injunction to protect its interest in the Collateral.

55. As a result of Borrower's ongoing breaches of the Security Documents and Forbearance Agreement, including its failure to make payments when due, selling Inventory out of trust and failure to execute the real estate mortgages, the value of the Inventory is no longer sufficient to secure CDF's outstanding balance and as such, CDF is seeking to recover the

8

Inventory and any other recoverable Collateral to satisfy the deficiency. Further, by reason of the past conduct of Borrower in selling Inventory out of trust, refusal to make payments, and refusal to honor essential terms of the Forbearance Agreement and Security Documents, CDF has reason to believe Borrower will dispose of CDF's remaining Collateral, including Inventory, without remitting payment therefore to CDF.

56. Unless the Court grants CDF's Application for a Temporary Restraining Order and Preliminary Injunction, the remaining Collateral, including the Inventory, may be dissipated, concealed, or sold to third parties, or ill-treated, damaged or otherwise destroyed before CDF's Application for a Pre-Judgment Writ can be heard. Specifically, when the Borrower misuses, ill treats, damages, or otherwise destroys, dissipates, conceals, or sells the Inventory without remitting payment to CDF, such actions cause CDF's secured interest in the Collateral to erode and causes CDF irreparable harm.

57. CDF has no adequate remedy at law for the injuries and damages currently being suffered and which are threatened in that the Collateral is being used in violation of the Security Documents and Borrower has sold Inventory out of trust. If further Inventory is sold out of trust or otherwise damaged, destroyed, misused or allowed to further depreciate and age, CDF's security interest in the Collateral will be further eroded.

58. Unless the Defendants, and all parties acting in concert with them, are enjoined and restrained from dissipating, concealing, selling, transferring, pledging, hypothecating, granting a security interest in, or otherwise disposing of the Collateral, or from ill-treating, damaging, destroying, or misusing the Collateral during the pendency of this action, CDF's interest may be irreparably harmed and a multiplicity of suits will be required, thus denying CDF an adequate remedy at law.

59. CDF has a first priority right to possession of all Inventory as against all Defendants. CDF submits that Borrower has no equity and/or financial interest in the Collateral and that CDF is under-collateralized. Nevertheless, CDF has or will post an undertaking/bond in double the value of the Inventory, and that CDF's sureties are bound to the Borrower for the return of the Inventory to the Borrower, if return of the Inventory is ordered, and for the payment

1  to the Borrower of any sum recovered against CDF.

2  WHEREFORE, CDF prays for judgment against Borrower as follows:

3  a. For possession of CDF's Collateral, including the Inventory; CDF reserves its
4  right to pursue the Borrower and any and all Guarantors of Borrower's obligations to CDF for
5  money damages and/or any deficiency amount, including, but not limited to, filing an arbitration
6  demand in the applicable arbitral forum;

7  b. For a temporary restraining order against Borrower and a preliminary injunction
8  against all Defendants, enjoining Defendants, and their agents, servants, employees, and other
9  persons acting under, in concert with, or for them, from dissipating, concealing, selling,
10 transferring, pledging, hypothecating, granting a security interest in, or otherwise disposing of
11 the Collateral and from ill-treating, damaging, destroying, or misusing the Collateral;

12 c. For attorneys' fees in a sum according to proof;

13 d. For costs of suit in a sum according to proof; and

14 e. For all such other and further relief as the Court may deem just and proper.

15 RESPECTFULLY SUBMITTED this 29th day of June, 2010.



David W. Huston
Attorney at Law
A Professional Corporation

By:  /s/David W. Huston
DAVID W. HUSTON, ESQ.
The Law Office of David W. Huston, p.c.
Nevada Bar No. 00855
601 South Seventh Street, 2nd Floor
Las Vegas, Nevada  89101
Attorney for Plaintiff